L. L. HERNDON *v.* C. C. MOORE.

**Principal and Surety—Pledge of Indemnity.**

In an action on a note, a surety can not complain that the payee did not make the pledge of indemnity perfect, where it is neither alleged nor proved that he could have done so.

**Principal and Surety—Negligence—Release of Surety.**

It was held that the payee of a note was not guilty of negligence or fraud in regard to a pledge of indemnity so as to release the surety on a note from liability.

APPEAL FROM SCOTT CIRCUIT COURT.

April 2, 1873.

OPINION BY JUDGE PETERS:

This action was brought in the court below by appellant against Charles C. Moore, surviving obligor on the following note:

"Georgetown, March 30, 1867.   One day after date we promise to pay to the order of L. L. Herndon Eight Thousand Dollars, value received.                     CHARLES C. MOORE.
$8,000.                                       J. D. GRISSIM."

Moore, in his answer, admits the execution of the note, but says he executed the same as the surety of his co-obligor, J. D. Grissim, which fact was at the time well known to the plaintiff.

That at the time of the execution of said note said J. D. Grissim had on special deposit at and with the branch of the Farmers Bank at Georgetown the sum of six thousand dollars in gold coin, which it was agreed at the time, between him and the plaintiff, should be

pledged as additional security for the payment of said note, and accordingly on the day said note was executed, to wit, on the 30th of March, 1867, and as a part of the same transaction, the plaintiff and said Grissim executed an agreement, whereby after reciting that said Grissim had on that day borrowed from the plaintiff $8,000 in currency, for which he, together with this defendant, had executed the note aforesaid, it was stipulated and agreed that said Grissim, as collateral security for the payment of said note, then and there pledged to the plaintiff $6,000 in gold then on deposit in the Farmers Bank in Georgetown, and it was further stipulated that said gold was not to be removed or disposed of without the consent of both parties to the transaction; but might be removed, or sold at any time or place as they might agree upon, and the proceeds to be used for the payment of said note, and interest thereon, the balance of the proceeds, if any, to belong to said Grissim. A copy of the agreement referred to is made a part of the answer. That said writing at the time it was executed, was deposited by the parties thereto in the branch bank of the Farmers Bank at Georgetown.

He says that neither said gold, its proceeds, nor any part thereof were used for, or applied to the payment of said note and interest thereon; but on the contrary said plaintiff, without the knowledge or consent of the defendant, and in violation of said written agreement, and of defendant's rights under it, suffered and permitted said $6,000 in gold to be removed from said bank by said Grissim for purposes other than the payment of said debt.

He states that at the date of said note and written agreement the premium on gold was —— per cent. and at the time the same was used and disposed of as aforesaid, the premium was —— per cent. Wherefore the defendant charges that at both, or either of said dates the value in currency of said $6,000 in gold was more than sufficient to discharge the debt and interest sued on, the principal being $8,000 in currency.

For the reason stated the defendant alleges he is released from all liability on said note. That at the date of said note said Grissim was solvent, or was believed to be so, that plaintiff, after the removal and disposition of said gold, had indulged said Grissim from time to time, without the knowledge or consent of defendant, who believed said note had been paid off, and he had no knowledge to the contrary until after the death of said Grissim, which occurred

at the —— day of ——, many months after the execution of said note; and that he died insolvent.

Afterwards appellee filed an amended answer to the effect that on the 12th of March, 1867, he conveyed to L. J. Peak a tract of land in payment for which he received near $6,000 in gold, which Peak then had on special deposit in the branch of the Farmers Bank in Georgetown. Subsequently he increased the amount to $6,000, and loaned the same to said Grissim, who had the bag containing it labeled in his name and left the gold in the bank on special deposit. That on the 30th of March, 1867, the gold then being in bank, the note sued on was executed, and also the agreement named in his original answer, a copy of which was filed therewith, and appellee then repeats the allegation made in his original answer, that said agreement to pledge said gold for said debt was entered into by and between Grissim and the plaintiff at the time the note was executed, and as part of the same transaction; but that defendant was then wholly ignorant that such pledge and agreement had been made, and so remained until after the death of Grissim, and until one of the officers of the bank communicated the fact to him. He avers that said writing was deposited in the bank by appellant and Grissim for safe keeping, while the gold was in the bank on special deposit. And he says "He does not know whether said plaintiff either at the time of said agreement, or afterwards notified or informed the officers of the bank that said agreement had been entered into, or that it had been deposited in said bank; but if he failed to do so, it was from his own negligence, and has resulted, without any negligence or fault on the part of this defendant, in the removal and loss of a security and pledge for said debt, to the benefit of which he, as he is advised and states, was and is entitled to as surety therein."

The cause was by agreement transferred to the equity docket, and on final hearing appellant's petition was dismissed at his costs and from that judgment he prosecutes this appeal.

According to any rational construction that can be placed on the writing referred to in the answer, the language clearly imports that Grissim was the principal in the note, and that appellee was his surety. And we have failed to discover such contradiction or inconsistency in the original and amended answers of appellee as counsel for appellant seem to think exists. The writing referred to may have

been executed as a part of the same transaction, referring to the borrowing of the money by Grissim, and appellee have been ignorant of it until he was informed thereof by Spears. But we do not consider the determination of these issues very material to a proper solution of the questions before us. We will pursue that inquiry no further.

It is shown by the testimony that the writing evidencing the pledge of the gold coin was taken to the bank sealed up in an envelope and handed to the cashier for safe keeping by one of the parties thereto in the presence of the other, neither of them disclosing to the cashier nor to any one else the contents of the sealed package, nor did they inform the officers of the bank that the gold deposited to the credit of. Grissim was not to be delivered to the one in the absence of the other.

The previous sealing of the package, and the silence of the parties as to its contents, at the time of the delivery, indicate very clearly that there was a pre-agreement between them that the contents of the writing was not to be disclosed, and the pledge of the gold not to be spoken of.

The indemnity, frail and uncertain as it was, certainly was not procured by the instrumentality of the appellee, for he says in his amended answer that he knew nothing of it until after the death of Grissim. Nor were his apprehensions such as to induce him to seek it. A very short time before he executed the note he loaned Grissim the gold which is the subject of controversy without security for its payment, and if he ever took a note for it or a writing evidencing the transaction, it is not shown in this record. It is therefore most probable that the indemnity, such as it was, was given at the request of appellant and as he had not the power to dictate the terms, he had to take it on such terms as he could get, and it is not for appellee to complain that appellant did not make the indemnity perfect when it is neither alleged nor proved that he could have done so.

Appellee, by signing the note as obligor, took the greater risk, and he was in consequence thereof under the greater necessity of seeking indemnity from the principal, but having failed to secure himself, he can not throw the loss on appellant, unless he has by such negligence as would amount to a fraud, failed to make the security, which he had taken, available, and there is no evidence that appellant knew of or consented to the removal of the gold.

As subsequent developments have shown, Grissim had very strong motives imposing secrecy on appellant on the subject of the pledge; he was, when the money was borrowed, in failing circumstances, and if it had been made known that he had borrowed and pledged the gold, his credit would have been thereby impaired, and the crisis hastened; hence it may be conjectured that the pledge was made on the condition that the fact should not be made public, and that appellant should rely on Grissim's written obligation that he would not dispose of the gold without his consent; this obligation Grissim violated.

From the facts disclosed in this record we have been unable to discover that appellant has been guilty of any fraud, or even of negligence, certainly not such as to release appellee from his responsibility as obligor on the note.

Wherefore the judgment is reversed and the cause is remanded with directions to render judgment against appellee for the unpaid balance on the note sued on.

*Huston, Robinson, Prewitt, for appellant.*

*Campbell, for appellee.*